UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAITLIN BERNARD, M.D.; <br> KATHERINE McHUGH, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE INDIVIDUAL MEMBERS OF THE <br> INDIANA MEDICAL LICENSING <br> BOARD, in their official capacities; <br> THE MARION COUNTY <br> PROSECUTOR, <br><br> Defendants. | No. 1:19-cv-1660 |

**Complaint for Declaratory and Injunctive Relief/Challenge to Constitutionality of Indiana Statute**

**Introduction**

1. Plaintiffs are physicians who provide abortions to women seeking them, prior to viability, in the second trimesters of their pregnancies. In the second trimester of pregnancy the abortions are performed through a dilation and evacuation procedure (D&E), which is the abortion procedure used in the vast majority of second trimester abortions in the United States. However, House Enrolled Act 1211 ("the Enrolled Act"), effective July 1, 2019, makes the D&E procedure illegal unless the physician performing it causes fetal demise prior to the abortion. But, this imposes additional invasive and medically unnecessary procedures prior to the abortion, which are not feasible to ensure

[1]

demise and which impose a heightened risk to the health of women and enforcement of the Enrolled Act would prevent physicians from providing pre-viability abortions and women from obtaining them. The statute causes an undue burden on the right of women to obtain pre-viability abortions and is an unwarranted invasion of their bodily integrity and is therefore unconstitutional. Appropriate injunctive and declaratory relief must issue.

**Jurisdiction, venue, and cause of action**

2.  This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.  Declaratory relief is authorized by Federal Rule of Civil Procedure 57 and by 28 U.S.C. §§ 2201, 2202.

5.  This case is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.  Dr. Caitlin Bernard is a physician, licensed in the State of Indiana by the Indiana Medical Licensing Board.

7.  Dr. Katherine McHugh is a physician, licensed in the State of Indiana by the Indiana Medical Licensing Board.

8.  The Individual Members of the Medical Licensing Board of Indiana comprise the body that licenses and disciplines physicians in Indiana. They are sued in their official

capacities and are designated by their official titles pursuant to Federal Rule of Civil Procedure 17(d).

9. The Marion County Prosecutor is the duly elected prosecutor in the county where the plaintiffs perform abortions. The prosecutor is sued in his official capacity and is designated by his official title pursuant to Federal Rule of Civil Procedure 17(d).

**Legal background**

10. The Enrolled Act creates a new statutory section, Indiana Code § 16-34-2-1(c) (eff. July 1, 2019), which provides that:

> A person may not knowingly or intentionally perform a dismemberment abortion unless reasonable medical judgment dictates that performing the abortion is necessary:
>
> (1) to prevent any serious health risk to the mother; or
> (2) to save the mother's life

11. The Enrolled Act provides, at Indiana Code § 16-18-2-96.4 (eff. July 1, 2019):

> (a) "Dismemberment abortion" means an abortion with the purpose of killing a living fetus in which the living fetus is extracted one (1) piece at a time from the uterus through clamps, grasping forceps, tongs, scissors, or another similar instrument that, through the convergence of two (2) rigid levers, slices, crushes, or grasps a portion of the fetus's body to cut or rip it off.
>
> (b) "Dismemberment abortion" does not include an abortion that uses suction to dismember a fetus by sucking fetal parts into a collection container.

12. A physician who, after July 1, 2019, performs a "dismemberment abortion" commits a Level 5 felony. Ind. Code § 16-34-2-7(a). He or she will also be subject to an injunction action or an action for damages. Ind. Code §§ 16-34-2-9; 16-34-2-10 (eff. July 1,

2019). He or she will also be subject to discipline imposed by the Indiana Medical Licensing Board, which could include loss of his or her medical license.

**Factual allegations**

13.   In Indiana, abortions during the first trimester of pregnancy may be performed in a clinic setting. However, after the first trimester and "before the earlier of viability of the fetus or twenty (20) weeks of post-fertilization age," the abortion must be performed in a hospital or ambulatory surgical center. Ind. Code § 16-34-2-1(a)(2).

14.   Although Indiana law refers to "post-fertilization age," medical professionals generally measure fetal age from the first day of the woman's last menstrual period or LMP.  Fertilization is considered to be 14 days post- LMP.

15.   The preferred methods of abortion during the first trimester of pregnancy are through a combination of medications that, in effect, cause a miscarriage, and through aspiration where a suction device is used to remove embryonic or fetal tissue from the uterus.

16.   Both in Indiana and in the United States, the standard method of abortion after the earliest weeks of the second trimester is through dilation and evacuation.

17.   Approximately 95% of abortions in the United States in the second trimester are performed by D&E procedures.

18.   The D&E procedure is used starting early in the second trimester.

19. In the D&E procedure, after the cervix is softened and dilated, the physician uses suction to remove amniotic fluid and the placenta and forceps or another surgical instrument to remove the fetus. Usually, because the cervical opening is narrower than the fetus, some disarticulation or separation of fetal tissue will occur.

20. The D&E procedure is the safest method available for abortions conducted in the second trimester. Indeed, in many states D&E procedures take place in an out-patient setting.

21. In Indiana, the only other method available for abortions conducted after approximately 15 weeks post-LMP is the use of medications to, in effect, induce labor and the delivery of a non-viable fetus. Induction can take anywhere from 8 to 36 hours, or even longer, and requires the woman to go into labor, which can involve pain requiring significant medication or anesthesia. Additionally, this can involve the risk of serious injury as giving birth is riskier to a woman's health than abortion.

22. Moreover, in a significant percentage of induction abortions, a woman must undergo an additional surgical procedure to remove a retained placenta.

23. Induction can also lead to uterine rupture, particularly in women with previous cesarean deliveries. For all these reasons, induction is not appropriate or available for many women. D&E is the standard abortion method after approximately 15 weeks.

24. If the Enrolled Act goes into effect, a D&E procedure will be able to be performed only if fetal demise occurs before the abortion.

25. Most physicians who provide D&E abortions do not attempt to induce fetal demise prior to abortion.

26. The reason for this is that the various fetal-demise methods carry medically unnecessary risks of injury to patients, may not be utilized on all patients, may be extremely painful to patients, may not be successful, have no medical benefit to the patient and are not medically indicated. The procedures can also be technically difficult, requiring extensive training beyond the expertise of most obstetrician-gynecologists.

27. Moreover, the fetal-demise methods have been subject to little-to-no research prior to 18 weeks LMP – when many D&Es take place. Indeed, certain fetal-demise methods have been subject to little study at all.

28. Dr. Bernard practices medicine and performs pre-viability abortions in women's second trimesters of pregnancy, including women whose pregnancies are advanced far enough that the aspiration abortion method is not possible.

29. The women are seeking these abortions because the fetus has been diagnosed as having either fatal or profound anomalies or because a physician has indicated that it would be dangerous for the woman to continue the pregnancy. However, the large majority of the abortions are because of diagnosed fatal or profound fetal anomalies.

30. Dr. Bernard provides abortions through D&E procedures.

31. Dr. McHugh has performed pre-viability second trimester abortions in the past through D&E procedures and intends to continue to do so in the future.

32. The second trimester abortions performed by Dr. McHugh all involved cases where the fetus suffered from fatal or profound anomalies.

33. Drs. Bernard and McHugh understand that the D&E procedure is the standard method of providing second-trimester abortions as it is the safest and most effective method.

34. Drs. Bernard and McHugh are aware of the Enrolled Act and understand that the only way that they can continue to provide D&E procedures if the Enrolled Act goes into effect would be if they acted to cause fetal demise.

35. Dr. Bernard is aware that, although Dr. McHugh has performed D&E abortions in the past and wishes to provide them in the future, there is only one other doctor in Indiana regularly performing second-trimester pre-viability abortions at the current time.

36. Neither that other doctor, Dr. Bernard nor Dr. McHugh are able to perform the fetal-demise methods.

37. In order to perform the fetal-demise methods, the doctors would at least require additional training as would the medical teams that would have to assist them.

38. If the law goes into effect, plaintiffs believe that patients will be prevented from obtaining abortions as they will not be able to obtain physicians to perform fetal-demise procedures in place of the D&E procedures currently being performed.

39. On behalf of their patients and future patients, Drs. Bernard and McHugh object to the patients having to undergo painful, risk-enhancing and infeasible procedures to

induce fetal demise in order to obtain an abortion. Because none of the fetal-demise procedures affords a feasible means to reliably induce fetal demise, and to do so without violating the Enrolled Act, and because the procedures all impose significant health risks, it would be extremely problematic for plaintiffs to use them even if they had the requisite training and experience.

40. The Enrolled Act forces a patient seeking a second-trimester abortion to undergo a risk-enhancing and unnecessary medical procedure, to remain pregnant against her will, or to undergo an induction abortion, which, as noted above, entails greater risk, pain, and time than D&E and is not an option for some women.

41. Even if they were able to be trained to do so, Drs. Bernard and McHugh do not desire to use the fetal-demise methods because as physicians, they have an ethical obligation not to subject their patients to potentially harmful procedures that provide no medical benefit.

42. The Enrolled Act requires them to violate their ethical obligations to their patients.

43. Moreover, the Enrolled Act places them in an impossible situation, as they are unable to know before beginning the fetal-demise procedures whether fetal demise will occur. If it does not, they may not be able to complete the abortion without violating the Enrolled Act. Because a physician cannot initiate a medical procedure without knowing that she has the capacity to see it through to completion, and because of the unreliability

of fetal-demise procedures, the Act will deter physicians from performing D&E abortions.

44. The Enrolled Act will prevent women from being able to obtain second-trimester abortions in Indiana through the safest method of abortion, pre-viability.

45. The Enrolled Act will discourage women from obtaining abortions.

46. The Enrolled Act will impose a substantial and unwarranted burden on women's ability to obtain second-trimester, pre-viability, abortions.

47. The Enrolled Act will cause plaintiffs' patients irreparable harm for which there is no adequate remedy at law.

48. At all times defendants have acted, and will act, under color of state law.

**Claims for relief**

49. The Enrolled Act, which bans the safest and most common method of abortion prior to viability in the second trimester of pregnancy, imposes an undue burden on women attempting to seek an abortion prior to viability and therefore violates the women's rights as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

50. The Enrolled Act, which forces women wishing to obtain a pre-viability abortion in the second trimester to undergo invasive, painful, infeasible and potentially medically risky procedures, in place of the safe and efficacious D&E procedure, violates the

women's right to bodily integrity guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Request for relief**

WHEREFORE, plaintiffs request that this Court:

a. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b. Declare that the D&E ban created by the Enrolled Act violates the United States Constitution for the reasons noted above.

c. Enter a preliminary injunction, later to be made permanent, enjoining the D&E ban created by the Enrolled Act.

d. Award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

e. Award all other proper relief.

Kenneth J. Falk
Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org

Andrew Beck
Motion to Appear Pro Hac Vice to be filed
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004

(212) 549-2641
abeck@aclu.org

Attorneys for Plaintiffs

[11]