UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAITLIN BERNARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-01660-SEB-MKK |
| ) | |
| INDIVIDUAL MEMBERS OF THE ) | |
| INDIANA MEDICAL LICENSING BOARD, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

This cause is now before the Court on Defendants' Motion for Judgment on the Pleadings [Dkt. 166]. Plaintiff Caitlin Bernard, M.D. brings this action against Defendants The Individual Members of the Indiana Medical Licensing Board in their official capacities, and the Marion County Prosecutor in his official capacity (collectively, the "State") challenging Indiana's statutory scheme that prohibits medical providers in Indiana from performing abortions through a dilation and evacuation (D&E) procedure when the procedure is performed, as is customary, before steps are taken to first cause fetal demise, unless the physician performing the abortion determines the procedure is necessary to prevent any serious health risk to the mother or to save the mother's life. In her complaint, Dr. Bernard originally advanced two legal claims: (1) that the challenged statutes impose an undue burden on patients attempting to obtain a pre-viability abortion (Compl. ¶ 49); and (2) that, by forcing patients seeking an abortion "to undergo invasive, painful, infeasible and potentially risky procedures, in place of the

1

safe and efficacious D&E procedure," the statutes violate their due process right to bodily integrity.  *Id.* ¶ 50.

In 2019, the Court preliminarily enjoined the statutes' enforcement on grounds that the fetal demise requirement imposes a substantial undue burden on the right of a woman in Indiana to seek a pre-viability abortion in the second trimester.  *See Bernard v. Individual Members of Ind. Med. Licensing Bd.*, 392 F. Supp. 3d 935, 964 (S.D. Ind. June 28, 2019).  The State did not appeal that decision and the challenged statutes remained enjoined until July 7, 2022, when the Court granted the State's motion to vacate the preliminary injunction in light of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), overruling *Roe v. Wade*, 410 U.S. 113 (1973), *Planned Parenthood of Southeastern PA. v. Casey*, 505 U.S. 833 (1992), and their progeny, which was the precedent on which our preliminary injunction decision relied.

The State now seeks a judgment on the pleadings in its favor on both of Plaintiff's claims.  With regard to her undue burden claim, Plaintiff concedes that it is foreclosed by the Supreme Court's decision in *Dobbs*, but requests that she be permitted to voluntarily dismiss that claim rather than have judgment entered against her.  Plaintiff argues that her bodily integrity claim, on the other hand, is unaffected by *Dobbs*, and, so long as the Court agrees that the claim is subject to heightened scrutiny, it survives the State's motion for judgment on the pleadings.  Plaintiff concedes, however, that if the Court determines Indiana's statutory scheme is subject to only rational basis review, then judgment must be entered in the State's favor on this claim.  Upon careful consideration of the parties'

arguments and the controlling legal precedents, we <u>GRANT</u> Defendants' Motion for Judgment on the Pleadings <u>with prejudice</u> as to Plaintiff's undue burden claim and <u>without prejudice</u> as to her bodily integrity claim.

## Factual Background

**The Challenged Statute**

Plaintiff challenges in this case Indiana Code § 16-34-2-1, which statute provides as follows:

> A person may not knowingly or intentionally perform a dismemberment abortion unless reasonable medical judgment dictates that performing the abortion is necessary:
>
> (1) to prevent any serious health risk to the mother; or
> (2) to save the mother's life.

*Id.* A "dismemberment abortion" is defined in the statute as an abortion "in which the living fetus is extracted (1) a piece at a time from the uterus through clamps, grasping forceps, tongs, scissors, or another similar instrument that, through the convergence of two (2) rigid levers, slices, crushes, or grasps a portion of the fetus's body to cut or rip it off," but does not include an abortion "that uses suction to dismember a fetus by sucking fetal parts into a collection container." Ind. Code § 16-28-2-96.4. A physician who performs an unlawful "dismemberment abortion" may be criminally prosecuted, (Ind. Code § 16-34-2-7(a)), subjected to a civil action for an injunction or damages, including attorneys' fees, (Ind. Code § 16-34-2-9-11), and suffer adverse consequences to her professional licensure. Compl. ¶ 12.

3

As discussed above, the challenged statute was preliminarily enjoined before it took effect. However, the Court subsequently vacated the preliminary injunction in light of the Supreme Court's intervening decision in *Dobbs*; thus, the statute is currently in effect.[1]

**The D&E Procedure**

The most common methods of abortion during the first trimester of pregnancy are (1) through a combination of medications that, in effect, cause a miscarriage, and (2) through aspiration where a suction device is used to remove embryonic or fetal tissue from the uterus. Compl. ¶ 15. Both in Indiana and throughout the United States, the standard method of abortion after the earliest weeks of the second trimester is through dilation and evacuation, commonly called a D&E procedure. *Id.* ¶ 16. Approximately 95% of abortions in the United States performed in the second trimester use this method. *Id.* ¶¶ 17–18. In the D&E procedure, after the cervix is softened and dilated, the physician uses suction to remove amniotic fluid and the placenta, and forceps or another surgical instrument to remove the fetus. *Id.* ¶ 19. Because the cervical opening is typically narrower than the fetus, some disarticulation or separation of fetal tissue will

---

[1] Following *Dobbs*, Indiana's legislature passed a new anti-abortion law banning nearly all abortion procedures in the State other than in cases of rape and incest, before 10 weeks post-fertilization; to protect the life and physical health of the mother; or if the fetus is diagnosed with a lethal anomaly. The law took effect on September 15, 2022, but was challenged in two lawsuits in state court, and preliminarily enjoined one week later. The law currently remains temporarily enjoined in both lawsuits after the Indiana Supreme Court denied a request from the State to allow the law to take effect pending a court ruling. *See Members of Med. Licensing Bd. of Ind. v. Planned Parenthood of Greater Nw., Haw., Alaska, Ind., Ky., Inc.*, 195 N.E.3d 384 (Ind. 2022). The dismemberment abortion ban challenged here appears in both versions of the statute.

usually occur. *Id.* Although the D&E procedure is by far the safest method for abortions conducted in the second trimester and is the standard abortion method used by physicians after approximately 15 weeks post-last menstrual period ("LMP"),[2] because of the challenged statute, other than when the pregnant patient's life or health is at risk, a D&E may be performed in Indiana only if fetal demise occurs before the abortion. *Id.* ¶¶ 20, 23–24.

Most physicians who provide D&E abortions do not attempt to induce fetal demise prior to the procedure because the various fetal-demise methods carry medically unnecessary risks of injury to patients, may not be utilized on all patients, may be extremely painful, may not be successful, have no medical benefit to the patient and are not medically indicated. Compl. ¶¶ 25–26; 39. Additionally, the procedures can be technically difficult, requiring extensive training beyond the expertise of most obstetrician-gynecologists. *Id.* ¶ 26. Fetal demise methods have also been subject to little study and research prior to 18 weeks LMP, when many D&Es are performed. *Id.* ¶ 27.

Apart from the D&E procedure, the only other method for abortions in Indiana conducted after approximately 15 weeks LMP is induction, which involves the use of medications to induce labor and delivery of a non-viable fetus. Compl. ¶ 21. Induction can take anywhere from 8 to 36 hours, or even longer, and requires the patient to go into

---

[2] Although Indiana law generally refers to "post-fertilization age," medical professionals generally measure fetal age from the first day of the patient's last menstrual period. Compl. ¶ 14. Fertilization is considered to be 14 days post-LMP. *Id.*

5

labor, which is extremely painful and can require significant medication or anesthesia. *Id.* Additionally, induction and delivery can involve the risk of serious injury as giving birth is riskier to a patient's health than abortion. *Id.* Moreover, in a significant percentage of induction abortions, the patient must undergo an additional surgical procedure to remove a retained placenta. *Id.* ¶ 22. Induction can also lead to uterine rupture, particularly in patients with previous cesarean deliveries. *Id.* ¶ 23. For these reasons, induction may be inappropriate or unavailable for many patients. *Id.*

**Plaintiff's Medical Practice**

Dr. Bernard practices medicine and performs pre-viability abortions in the second trimester of pregnancy, including for patients whose pregnancies are advanced far enough that the aspiration abortion method is not possible. Compl. ¶ 28. Patients seek these abortions because a physician had indicated that it would be dangerous for the patient to continue the pregnancy, or, in the large majority of cases, because the fetus has been diagnosed as having either fatal or profound anomalies. *Id.* ¶ 29.

Because the D&E procedure is the safest and most effective and thus the standard method for performing second-trimester abortions, that is the procedure Dr. Bernard uses to treat such patients. *Id.* ¶¶ 30, 33. Following the vacatur order to rescind this Court's preliminary injunction, Dr. Bernard understands that the only way she can continue to provide D&E procedures (at least when the pregnant patient's health is not at risk) is to successfully cause fetal demise prior to performing the D&E. *Id.* ¶ 34. Dr. Bernard's complaint alleges, however, that no doctor regularly performing second-trimester abortions in Indiana is currently able to perform fetal demise. *Id.* ¶¶ 35–36. In order to

6

perform the fetal-demise methods, Indiana doctors and the medical teams needed to assist them would at the very least first require additional training. *Id.* ¶ 37.

On behalf of her patients and future patients, Dr. Bernard has filed this lawsuit to challenge the State's "dismemberment abortion" ban, which statute she alleges requires her patients to undergo painful, risk-enhancing, and infeasible procedures to induce fetal demise in order to obtain a second-trimester abortion. *Id.* ¶ 39. Dr. Bernard alleges that because all fetal demise procedures impose significant health risks without affording a reasonable means to reliably induce fetal demise, even if she had the requisite training and experience, she would not desire to use the fetal-demise methods because, as a physician, she has an ethical obligation not to subject her patients to potentially harmful procedures that provide no medical benefit. *Id.* ¶ 41. Moreover, Dr. Bernard claims that the challenged statute places her in an untenable situation, as she is unable to know before beginning the fetal-demise procedures whether fetal demise will in fact occur, and, if it does not occur, she may not be able to complete the abortion without violating the challenged statute. *Id.*

## Legal Analysis

### I. Applicable Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). "Only when it appears beyond a doubt that the plaintiff cannot prove any

facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). "Judgment on the pleadings is appropriate where there are no disputed issues of material fact and it is clear that the moving party," here, the State, is "entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). When assessing a motion for judgment on the pleadings, "we draw all reasonable inferences and facts in favor of the non-movant, but need not accept as true any legal assertions." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018).

## II.     Undue Burden Claim

We turn first to address Plaintiff's undue burden claim. As discussed above, the parties agree that this claim is foreclosed by the Supreme Court's ruling in *Dobbs* and Plaintiff has indicated that she no longer intends to pursue this theory of relief. The only remaining dispute between the parties, then, is whether Plaintiff should be permitted to withdraw her undue burden claim such that it is treated as dismissed without prejudice or whether judgment must be entered in favor of Defendants on that claim.

Voluntary dismissal by court order under Rule 41(a)(2) allows the plaintiff to dismiss "an action" on "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Seventh Circuit has recognized that, "since [w]e give the Federal Rules of Civil Procedure their plain meaning, … Rule 41(a) should be limited to the dismissal of an entire action." *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (internal citation and quotation marks omitted). Accordingly, when a plaintiff seeks to voluntarily dismiss a

8

single claim, the Seventh Circuit has held that the "proper vehicle" for doing so is a Rule 15(a) motion to amend the pleadings. *Id.* at 857–58.

Here, Plaintiff has neither formally moved to voluntarily dismiss her undue burden claim nor requested to amend the pleadings to drop it from this litigation, and concedes that this theory of relief does not survive *Dobbs*. Accordingly, Defendants are entitled to judgment on the pleadings on Plaintiff's undue burden claim and we therefore <u>GRANT</u> Defendant's motion as to this claim. As Defendants recognize, however, "collateral estoppel yields when there is a change in the 'applicable legal rules.'" Dkt. 177 at 2 (quoting *Coleman v. C.I.R.*, 16 F.3d 821, 830 (7th Cir. 1994)). This judgment therefore has no effect on Plaintiff's ability to raise the claim anew if the governing legal rules change.

### III.   Bodily Integrity Claim

We turn next to consider Plaintiff's bodily integrity claim. Plaintiff argues that her substantive due process claim based on her patients' right to bodily integrity survives even after *Dobbs* based on Supreme Court precedent recognizing that "the right to bodily integrity is implicated when the government interferes with persons' ability to make their own medical decisions." Pl.'s Resp. at 11–12. Prior to *Dobbs*, we denied Plaintiff's request for preliminary injunctive relief on this claim on grounds that it was coextensive with her undue burden claim governed by *Casey* and its progeny. However, since those authorities were overruled by *Dobbs*, we must now address whether Plaintiff has plausibly alleged a substantive due process claim based on the right to bodily integrity under the standard set forth in *Dobbs*.

The Supreme Court's decision in *Dobbs* specifically resolves "whether all pre-viability prohibitions on *elective* abortions are constitutional." 142 S. Ct. at 2244 (emphasis added). *Dobbs* makes clear that the abortion context is unique and that states need only have a rational basis for laws regulating elective abortions. Accordingly, to the extent that Indiana's dismemberment ban regulates elective abortions, it must be upheld under *Dobbs*, because, as Plaintiff concedes, the statute meets rational basis review.

However, "*Dobbs* merely changed the framework by which lower courts must evaluate regulations on elective abortions." *Planned Parenthood Great Nw. Haw., Alaska, Ind., and Ky., Inc. v. Cameron*, --- F. Supp. 3d ---, 2022 WL 3973263, at *6 (W.D. Ky. Aug. 30, 2022). Thus, we do not read *Dobbs* to necessarily affect the substantive due process right to an *emergency* abortion.

While *Dobbs* does not define the term "elective," the Mississippi statute upheld by the Supreme Court includes exceptions to its total ban on abortion beyond fifteen weeks for "medical emergenc[ies]" and "severe fetal anomal[ies]." *Dobbs*, 142 S. Ct. at 2284 (citing Miss. Code Ann. § 41-41-191(4)(b)). Courts have in other contexts described elective procedures as those "medically acceptable [but] not always necessary," *Hum. Rsch. Inst. of Norfolk, Inc. v. Blue Cross of Va.*, 484 F. Supp. 520, 543 (E.D. Va. 1980), and distinguishable from emergency procedures in that they "can be scheduled at the convenience of doctor and patient," *Perez v. Nidek Co.*, 711 F.3d 1109, 1116 (9th Cir. 2013). As these cases show, both "courts and the healthcare industry have noted differences between an elective procedure and an emergency procedure." *Cameron*, 2022 WL 3973263, at *5.

10

In *Cameron*, the District Court in the Western District of Kentucky recently held that, given that *Dobbs* specifically addressed only elective abortions and "there is no indication that *Dobbs* affected the substantive due process right to an emergency abortion to save the life or health of the pregnant woman. … [T]he Court must find that [the p]laintiffs' patients retain a liberty interest in non-elective emergency abortion procedures for the life or health of the pregnant woman, which is protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at *6.

We agree with the *Cameron* Court that an "emergency abortion" includes at the very least those circumstances in which the pregnant patient's life or health is at serious risk. As discussed above, Indiana's dismemberment ban includes an exception for the life and health of the mother. Accordingly, as currently framed, Plaintiff's complaint does not state a plausible substantive due process claim based on her patients' right to bodily integrity.

However, given that *Dobbs* does not define "elective," it is not clear whether an exception such as that in the dismemberment ban which is *only* for the life and health of the pregnant patient necessarily covers *all* medical emergencies, including those that would complicate a pregnancy to a point where it would require an immediate, non-elective abortion. Nor is it clear post-*Dobbs* whether a statute placing conditions on receipt of emergency abortion procedures, thereby requiring a patient to undergo a more dangerous, lengthy, painful, and in some cases unavailable procedure in order to receive a non-elective abortion, could potentially implicate a substantive due process right. We simply cannot say at this juncture, therefore, that any amendment to the complaint would

11

necessarily be futile, particularly in light of how recently *Dobbs* was decided and how much it has changed the constitutional landscape in the abortion context. For these reasons, we GRANT Defendant's motion for judgment on the pleadings as to Plaintiff's bodily integrity claim without prejudice.

## IV.  Conclusion

For the reasons detailed above, Defendant's Motion for Judgment on the Pleadings [Dkt. 166] is GRANTED with prejudice as to Plaintiff's undue burden claim, but without prejudice as to Plaintiff's bodily integrity claim. Plaintiff is permitted thirty (30) days from the date of this entry within which to file an amended complaint addressing the deficiencies identified in this order, if possible.

IT IS SO ORDERED.

Date:   3/31/2023

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Christopher Michael Anderson
INDIANA ATTORNEY GENERAL
christopher.anderson@atg.in.gov

H. Christopher Bartolomucci
SCHAERR &#124; JAFFE LLP
cbartolomucci@schaerr-jaffe.com

Andrew Beck
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
abeck@aclu.org

Meagan Marlis Burrows
AMERICAN CIVIL LIBERTIES UNION
mburrows@aclu.org

Julia Chapman
DECHERT LLP
julia.chapman@dechert.com

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Thomas M. Fisher
INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Hope S. Freiwald
DECHERT LLP
hope.freiwald@dechert.com

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Scott David Goodwin
SCHAERR JAFFE LLP
sgoodwin@schaerr-jaffe.com

Melinda Rebecca Holmes
INDIANA ATTORNEY GENERAL
melinda.holmes@atg.in.gov

Katherine V. Mackey
WILMER CUTLER PICKERING HALE AND DORR LLP
katherine.mackey@wilmerhale.com

Lori Martin
WILMER CUTLER PICKERING HALE AND DORR LLP
lori.martin@wilmerhale.com

Marissa Medine
WILMER CUTLER PICKERING HALE AND DORR LLP
marissa.medine@wilmerhale.com

Jenny Pelaez
WILMER CUTLER PICKERING HALE AND DORR LLP
jenny.pelaez@wilmerhale.com

Joshua J. Prince
SCHAERR JAFFE LLP
jprince@schaerr-jaffe.com

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Cristina Salcedo
WILMER CUTLER PICKERING HALE AND DORR LLP
cristina.salcedo@wilmerhale.com

Gene C. Schaerr
SCHAERR JAFFE LLP
gschaerr@schaerr-jaffe.com

Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
alan.schoenfeld@wilmerhale.com

Allyson Slater
WILMER CUTLER PICKERING HALE AND DORR LLP
allyson.slater@wilmerhale.com

Stefanie Tubbs
DECHERT LLP
stefanie.tubbs@dechert.com

Whitney Leigh White
AMERICAN CIVIL LIBERTIES UNION
wwhite@aclu.org